Bоттini & Bоттini, inc.
Francis A. Bottini, Jr. (SBN 175783)
  fbottini@bottinilaw.com
Albert Y. Chang (SBN 296065)
  achang@bottinilaw.com
Yury A. Kolesnikov (SBN 271173)
  ykolesnikov@bottinilaw.com
7817 Ivanhoe Avenue, Suite 102
La Jolla, California 92037
Telephone:    (858) 914-2001
Facsimile:     (858) 914-2002

*Attorneys for Plaintiff Stanley Withouski*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| STANLEY WITHOUSKI, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>ROBINHOOD FINANCIAL LLC, ROBINHOOD MARKETS, INC., ROBINHOOD SECURITIES, LLC, and DOES 1 through 20, inclusive,<br><br>Defendants. | Case No. 3:20-cv-3550-JD<br><br>**Plaintiff's Notice of Motion and Motion to Remand Action; Memorandum of Points and Authorities in Support Thereof**<br><br>Date:          August 6, 2020<br>Time:          10:00 a.m.<br>Courtroom:  11, 19th Floor<br>Judge:         Honorable James Donato |

# Table of Contents

NOTICE OF MOTION AND MOTION TO REMAND ACTION .................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................ 2

I.      STATEMENT OF ISSUES TO BE DECIDED ................................................ 2

II.     PRELIMINARY STATEMENT ................................................................. 3

III.    STATEMENT OF FACTS ........................................................................ 4

        A.      Robinhood's Two-Day System Crashes ...................................... 4

        B.      Plaintiff's Claims ...................................................................... 4

IV.     LEGAL STANDARD .............................................................................. 5

        A.      Removal Jurisdiction ............................................................... 5

        B.      The SLUSA Bar ....................................................................... 5

V.      ARGUMENT ........................................................................................ 7

        A.      The SLUSA Bar Is Inapplicable Because Plaintiff's Claims
                Do Not Depend on Deception or Misrepresentation ................... 7

        B.      The SLUSA Bar Is Inapplicable Because Plaintiff's Claims
                Do Not Arise "in Connection with" the Purchase or
                Sale of a Covered Security ...................................................... 11

VI.     CONCLUSION ................................................................................... 16

1

## Table of Authorities

2

**Cases**

3

*Banks v. N. Trust Corp.*,
4
 929 F.3d 1046 (9th Cir. 2019) ................................................................... 11

5

*Berryman v. Merit Prop. Mgmt., Inc.*,
 152 Cal. App. 4th 1544 (2007) ..................................................................... 9

6

*Brownfield v. Daniel Freeman Marina Hosp.*,
7
 208 Cal. App. 3d 405 (1989) ........................................................................ 9

8

*California v. AbbVie Inc.*,
 390 F. Supp. 3d 1176 (N.D. Cal. 2019) ....................................................... 5

9

*Chadbourne & Parke LLP v. Troice*,
10
 571 U.S. 377 (2014) ............................................................................. *passim*

11

*Cleveland v. Policy Mgmt. Sys. Corp.*,
 526 U.S. 795 (1999) ................................................................................... 10

12

*Desai v. Deutsche Bank Sec. Ltd.*,
13
 573 F.3d 931 (9th Cir. 2009) ..................................................................... 10

14

*Falkowski v. Imation Corp.*,
 309 F.3d 1123 (9th Cir. 2002) ............................................................... 7, 13

15

*First Commercial Mortg. Co. v. Reece*,
16
 89 Cal. App. 4th 731 (2001) ......................................................................... 8

17

*Fleming v. The Charles Schwab Corp.*,
 878 F.3d 1146 (9th Cir. 2017) .............................................................. 3, 10

18

*Freeman Invs., L.P. v. Pac. Life Ins. Co.*,
19
 704 F.3d 1110 (9th Cir. 2013) ............................................................. *passim*

20

*Gaus v. Miles, Inc.*,
 980 F.2d 564 (9th Cir. 1992) .................................................................. 5, 15

21

*Hawaii ex rel. Louie v. HSBC Bank Nevada, N.A.*,
22
 761 F.3d 1027 (9th Cir. 2014) ..................................................................... 5

23

*In re Kingate Mgmt. Ltd. Litig.*,
 784 F.3d 128 (2d Cir. 2015) ......................................................................... 6

24

*LaSala v. Bordier et Cie*,
25
 519 F.3d 121 (3d Cir. 2008) ...................................................................... 10

26

*Lectrodryer v. Seoulbank*,
 77 Cal. App. 4th 723 (2000) ........................................................................ 9

27

28

ii

*Luther v. Countrywide Home Loans Servicing LP*,
    533 F.3d 1031 (9th Cir. 2008) ........................................................................ 5

*Madden v. Cowen & Co.*,
    576 F.3d 957 (9th Cir. 2009) ..................................................................... 6, 11

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*,
    547 U.S. 71 (2006) ............................................................................ 5, 7, 14

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Manning*,
    136 S. Ct. 1562 (2016) ............................................................................... 6

*Moore-Thomas v. Alaska Airlines, Inc.*,
    553 F.3d 1241 (9th Cir. 2009) ........................................................................ 5

*PAE Gov't Servs., Inc. v. MPRI, Inc.*,
    514 F.3d 856 (9th Cir. 2007) ........................................................................ 10

*Proctor v. Vishay Intertechnology Inc.*,
    584 F.3d 1208 (9th Cir. 2009) ...................................................................... 10

*SEC v. Zandford*,
    535 U.S. 813 (2002) ............................................................................... 14

*Shamrock Oil & Gas Corp. v. Sheets*,
    313 U.S. 100 (1941) ................................................................................ 5

*Spielman v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    332 F.3d 116 (2d Cir. 2003) ..................................................................... 2, 11

*Stanley v. Richmond*,
    35 Cal. App. 4th 1070 (1995) ........................................................................ 9

*Superintendent of Ins. of N.Y. v. Bankers Life & Cas. Co.*,
    404 U.S. 6 (1971) ................................................................................. 15

*The Wharf (Holdings) Ltd. v. United Int'l Holdings, Inc.*,
    532 U.S. 588 (2001) ............................................................................... 14

*Toland v. Sunland Hous. Grp., Inc.*,
    18 Cal. 4th 253 (1998) .............................................................................. 9

*United States v. O'Hagan*,
    521 U.S. 642 (1997) ............................................................................... 14

*United States v. Ritchie*,
    342 F.3d 903 (9th Cir. 2003) ........................................................................ 12

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003) .................................................................... 9, 10

*Walling v. Beverly Enters.*,
    476 F.2d 393 (9th Cir. 1973) ........................................................................ 2

iii

1

**Statutes**

2    15 U.S.C. § 77p ............................................................................ 6, 11, 14, 15

3    15 U.S.C. § 78j(b) ................................................................................. 6, 13

4    15 U.S.C. § 78u-4 ....................................................................................... 5

5    15 U.S.C. § 78bb .................................................................................... 6, 11

6    28 U.S.C. § 1447 ...................................................................................... 1, 5

7    Cal. Bus. & Prof. Code § 17200 ............................................................ 4, 9

8    Cal. Civ. Code § 1750 .................................................................................. 4

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## NOTICE OF MOTION AND MOTION TO REMAND ACTION

2  TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

3          PLEASE TAKE NOTICE that on August 6, 2020 at 10:00 a.m., before the

4  Honorable James Donato at the United States District Court, Northern District of

5  California, San Francisco Courthouse, in Courtroom 11, on the 19th Floor, located at 450

6  Golden Gate Avenue, San Francisco, California 94102, plaintiff Stanley Withouski will

7  and hereby does move this Court for an order under 28 U.S.C. § 1447(c):

8      • remanding this action to the Superior Court of the State of California, County

9        of San Mateo, because there is no basis for removal based on federal question

10       under the Securities Litigation Uniform Standards Act of 1998; and

11     • granting such further and other relief as the Court deems just and proper.

12         Plaintiff's motion is based on this Notice of Motion and Motion, the accompanying

13  Memorandum of Points and Authorities in Support Thereof, the Declaration of Albert Y.

14  Chang, and all papers and proceedings in this action.

15  Dated:  June 26, 2020                    Respectfully submitted,

16                                            BOTTINI & BOTTINI, INC.
                                              Francis A. Bottini, Jr. (SBN 175783)
17                                            Albert Y. Chang (SBN 296065)
                                              Yury A. Kolesnikov (SBN 271173)
18
                                              _____
                                                   s/ Francis A. Bottini, Jr.
19                                               Francis A. Bottini, Jr.

20                                            7817 Ivanhoe Avenue, Suite 102
                                              La Jolla, California 92037
21                                            Telephone:  (858) 914-2001
                                              Facsimile:   (858) 914-2002
22                                            fbottini@bottinilaw.com
                                              achang@bottinilaw.com
23                                            ykolesnikov@bottinilaw.com

24                                            *Attorneys for Plaintiff Stanley Withouski*

25

26

27

28

**1**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   STATEMENT OF ISSUES TO BE DECIDED

The Securities Litigation Uniform Standards Act of 1998 ("SLUSA") prohibits "artful pleading" of securities-fraud class actions in state court designed to evade federal jurisdiction — the stricture of the Private Securities Litigation Reform Act of 1995 ("PSLRA") (*e.g.*, the requirement to plead scienter with particularity). This so-called "SLUSA bar" has a "broad, *but not unlimited*, scope." *Spielman v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 332 F.3d 116, 123 (2d Cir. 2003) (emphasis in original). Indeed, as the Ninth Circuit held in *Walling v. Beverly Enterprises*, "[n]ot every breach of a stock sale agreement adds up to a violation of the securities law." 476 F.2d 393, 397 (9th Cir. 1973). In *Chadbourne & Parke LLP v. Troice*, the Supreme Court limited SLUSA's reach — and the "in-connection-with" requirement — to cases involving an alleged fraud that is "material to a decision to ... buy or sell a 'covered security.'" 571 U.S. 377, 387 (2014).

Here, plaintiff brought this class action against an online stock brokerage firm, asserting California state-law claims (negligence, breach of contract, and the like) arising from the firm's day-long system crashes that prevented customers from accessing their online accounts and making stock trades.

The issue to be decided on this motion to remand is:

- By alleging that defendants failed to maintain, as promised, a high-tech, reliable online trading system, are plaintiff's claims based on alleged misrepresentations or omissions in connection with the purchase or sale of covered securities?

Put differently:

- Is the SLUSA bar so unlimited, and can the "in-connection-with" requirement be interpreted so broadly, as to preclude plaintiff's claims based on being prevented from accessing his account and trading covered securities?

2

1

## II.    PRELIMINARY STATEMENT

2           Circuit precedent requires that the Court answer "no" to the questions above and

3    remand this action. In *Fleming v. The Charles Schwab Corp.*, the Ninth Circuit held that

4    the SLUSA bar does not preclude a customer's claim for breach of duty by a stock

5    brokerage firm, like the Robinhood defendants here,[1] on the basis that "its trading

6    systems crashed." 878 F.3d 1146, 1154 (9th Cir. 2017). This is exactly what plaintiff alleges

7    here. Stanley Withouski is a Robinhood customer. ¶ 16.[2] He alleges that he and other class

8    members — all California residents — entered into a Customer Agreement with

9    Robinhood, under which they agreed to use Robinhood's website and application ("app")

10   to trade stocks and other financial instruments. ¶¶ 3, 58. On March 2 and 3, 2020,

11   however, Robinhood's website and app crashed, leaving plaintiff and other class members

12   with no access to their accounts. To recover damages resulting from being prevented from

13   trading due to Robinhood's system crashes, plaintiff brought this action in state court,

14   alleging common-law claims (*e.g.*, negligence and breach of contract) and violations of

15   California's consumer-protection statutes.

16           Plaintiff's claims do not arise from fraud — much less from any "manipulative or

17   deceptive device" design to inflate the price of any security. Neither misrepresentations

18   nor omissions form the factual predicate of plaintiff's state-law claims. Absent this factual

19   predicate, Robinhood cannot justify the removal of this action.

20           Nor can the "in-connection-with" requirement be satisfied because, under *Troice*

21   and circuit precedent, any misrepresentation or omission on the part of Robinhood must

22   be material to the decision to purchase or sell a "covered security." Any

23   misrepresentations or omissions alleged in the complaint pertain to Robinhood's

24

25

26           ――――――――――――――――
             [1] Defendants are Robinhood Markets, Inc. and its two wholly-owned subsidiaries,
27   Robinhood Financial LLC and Robinhood Securities, LLC (collectively, "Robinhood").
             [2] The allegations in Withouski's April 20, 2020 complaint (Dkt. No. 1 at 10–27),
28   filed in the Superior Court of California, County of San Mateo, are cited as "¶ ___."

Plaintiff's Motion to Remand Action                              Case No. 3:20-cv-3550-JD

inducement of plaintiff to use its services — not to any security transactions. Robinhood's removal is thus improper.

Accordingly, this Court should grant plaintiff's motion and remand this action.

## III.    STATEMENT OF FACTS

### A.    Robinhood's Two-Day System Crashes

This action arises from Robinhood's system crashes on March 2 and 3, 2020 that left customers without access to their accounts and prevented them from trading during the largest daily point gain in the Dow Jones' history. Founded in 2013, Robinhood is an online broker-dealer. ¶¶ 17–19. Proclaiming to be "a pioneer of commission-free investing," Robinhood provides an online platform for customers to use its website, app, and telephone help center to trade stocks, options, exchange-traded funds, and cryptocurrency. ¶¶ 3, 23. To attract customers, Robinhood touts its "[e]xceptionally engineered systems" and "[s]implicity." ¶ 3.

But fundamental defects in Robinhood's capabilities and trading platform were revealed on March 2 and 3, 2020, when its system crashed — preventing customers from logging in, trading, or accessing their accounts as stock markets surged. ¶¶ 4, 34–36. These complete service outages caused by the system crashes were devastating to Robinhood's customers who planned to make trades during one of the largest market surges of all time. *See id.*

### B.    Plaintiff's Claims

Seeking damages and injunctive relief on behalf of himself and all Robinhood customers residing in California (¶ 37), plaintiff asserts eight state-law claims: (1) declaratory relief; (2) negligence; (3) breach of fiduciary duty; (4) breach of contract, (5) breach of the implied covenant of good faith and fair dealing; (6) unjust enrichment; (7) violations of California's Consumer Legal Remedies Act ("CLRA"), CAL. CIV. CODE §§ 1750, *et seq.*; and (8) violations of the Unfair Competition Law ("UCL"), CAL. BUS. & PROF. CODE §§ 17200, *et seq.* ¶¶ 40–84.

4

Plaintiff filed his complaint on April 20, 2020 in the Superior Court of California, County of San Mateo. *See* Dkt. No. 1 at 10−27. Robinhood removed the action to this Court on May 27, 2020.

## IV.   LEGAL STANDARD

### A.   Removal Jurisdiction

The removal jurisdiction of the federal courts is derived entirely from the statutory authorization of Congress. *See Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 109 (1941). "Principles of federalism, comity, and respect for the state courts also counsel strongly in favor of scrupulously confining removal jurisdiction to the precise limits that Congress has defined." *California v. AbbVie Inc.*, 390 F. Supp. 3d 1176, 1180 (N.D. Cal. 2019) (Donato, J.) (citing *Shamrock*, 313 U.S. at 109). Thus, all "removal statutes are strictly construed against removal," *Luther v. Countrywide Home Loans Servicing LP*, 533 F.3d 1031, 1034 (9th Cir. 2008), and "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992).

"The 'strong presumption' against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper." *Id.* at 566. "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). Thus, "any doubt about the right of removal requires resolution in favor of remand." *Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241, 1244 (9th Cir. 2009); *see also AbbVie*, 390 F. Supp. 3d at 1180 (same) (citing *Hawaii ex rel. Louie v. HSBC Bank Nevada, N.A.*, 761 F.3d 1027, 1034 (9th Cir. 2014)).

### B.   The SLUSA Bar

SLUSA was enacted "to prevent certain State private securities class action lawsuits alleging fraud from being used to frustrate the objectives" of the PSLRA — to curb "perceived abuses of the class-action vehicle in litigation involving nationally traded securities." *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 81, 86

5

1  (2006). The PSLRA's reforms — for example, imposing heightened pleading standards

2  and a discovery stay (*see* 15 U.S.C. § 78u-4(b)(2)–(3)) — had the "unintended

3  consequence" of plaintiffs avoiding federal court and "bringing class actions under state

4  law, often in state court." *Id.* at 82. To "stem this 'shif[t] from Federal to State courts,'" *id.*,

5  SLUSA allows removal and dismissal of any class actions filed in state court asserting

6  essentially securities-fraud claims that are disguised as state-law claims. SLUSA's text

7  provides a three-prong test for identifying such actions: "covered class action[s]" (prong

8  1), "based upon the statutory or common law of any State" (prong 2), and "alleging ... an

9  untrue statement or omission of a material fact in connection with the purchase or sale of

10  a covered security" (prong 3). 15 U.S.C. §§ 77p(b), 78bb(f)(1)–(2); *see also Madden v.*

11  *Cowen & Co.*, 576 F.3d 957, 964 (9th Cir. 2009).

12      Consistent with SLUSA's aim, the state-law claims falling within the SLUSA bar

13  are typically those that are pursuable under Section 10(b) of the Securities Exchange Act

14  of 1934 (the "Exchange Act"). *See In re Kingate Mgmt. Ltd. Litig.*, 784 F.3d 128, 146 (2d

15  Cir. 2015) ("the history and the purposes of [SLUSA] all favor interpreting it to apply to

16  state law claims ... [that] would be subject to the PSLRA if pleaded as a private securities

17  claim"). This is a sensible interpretation of the SLUSA bar given SLUSA's purpose is to

18  redirect such claims back to federal court, where they would be subject to the obstacles

19  imposed by the PSLRA.

20      The SLUSA bar, however, was not meant to preclude class actions raising

21  legitimate state-law claims that would not be cognizable under the Exchange Act. As the

22  Supreme Court cautioned in *Troice*, an over-broad interpretation of SLUSA "would

23  interfere with state efforts to provide remedies for victims of ordinary state-law frauds."

24  571 U.S. at 391. Accordingly, in light of the "important role of state courts," federal courts

25  must "decline[] to construe federal jurisdictional statutes more expansively than their

26  language, most fairly read." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Manning*, 136

27  S. Ct. 1562, 1573 (2016).

28

**6**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## V.     ARGUMENT

### A.     The SLUSA Bar Is Inapplicable Because Plaintiff's Claims Do Not Depend on Deception or Misrepresentation

As the Supreme Court held in *Dabit*, SLUSA's preemptive reach is limited and stays clear of "historically entrenched state-law remed[ies]." *See* 547 U.S. at 88. Consistent with *Dabit*, the Ninth Circuit has repeatedly held that garden-variety common-law claims, such as negligence and breach of contract, fall outside SLUSA's ambit, even though the claims relate to the purchase or sale of a covered security, because the underlying conduct — breach of a duty or a promise — does not constitute a "misrepresentation." *See, e.g., Falkowski v. Imation Corp.*, 309 F.3d 1123, 1131–32 (9th Cir. 2002) ("[t]he breach of contract claims ... are not preempted by federal securities laws"). Put differently, the SLUSA bar applies only where "deceptive statements or conduct form the gravamen or essence of [plaintiff's] claim[s]." *Freeman Invs., L.P. v. Pac. Life Ins. Co.*, 704 F.3d 1110, 1116 (9th Cir. 2013) (same).

In *Freeman*, for example, the Ninth Circuit held that the insureds' contract-based claims — breach of contract and breach of the duty of good faith and fair dealing — were not preempted by SLUSA because they were not prejudicated upon "deception or misrepresentation." *See id.* There, insureds brought a class action against the insurer alleging deceptive business practices involving variable universal life insurance policies, whose values were tied to investments in covered securities. *See id.* at 1113–14. Specifically, the insureds claimed that the insurer breached their policy terms by overcharging them for the "cost of insurance" — a term of art in the insurance industry. *Id.* at 1115. Arguing for the application of the SLUSA bar, the insureds latched onto the allegations of "'systematic concealment'" and "'deceitful conduct'" in the complaint. *See id.* Rejecting the insureds' argument as "formalistic," the Ninth Circuit "[s]tripped [the insureds' claim] to its essence" and found that no proof of deception was necessary for the insureds to prevail:

Plaintiff's Motion to Remand Action                                                    Case No. 3:20-cv-3550-JD

> [The insureds] ... raise a dispute about the meaning of a key contract term, and the success of their claim will turn on whether they can convince the court or jury that theirs is the accepted meaning in the industry. ...
>
> To succeed on this claim, plaintiffs need not show that [the insurer] misrepresented the cost of insurance or omitted critical details. They need only persuade the court that theirs is the better reading of the contract term. ... "[W]hile a contract dispute commonly involves a '*disputed truth*' about the proper interpretation of the terms of a contract, *that does not mean one party omitted a material fact* by failing to anticipate, discover and disabuse the other of its contrary interpretation of a term in the contract."

*Id.* at 1115 (internal citations omitted; emphases added). Refusing to "recast [these] contract claims as fraud claims," the Ninth Circuit reasoned that:

> Just as plaintiffs cannot avoid SLUSA through crafty pleading, *defendants may not recast contract claims as fraud claims* by arguing that they "really" *involve deception or misrepresentation.*

*Id.* (emphases added).

Freeman's reasoning applies here. Just like the insureds in *Freeman*, Plaintiff alleges, in Count IV (breach of contract) and Count V (breach of the implied covenant of good faith and fair dealing), that Robinhood "promised one thing and delivered another." *Id.* at 1118. Specifically, plaintiff claims that Robinhood "breached [the] Customer Agreements by ... failing to (a) provide the services promised; (b) maintain an adequate emergency plan; and (c) properly disclose the risks of outages and the occurrences of past outages." ¶ 59. Nothing in these allegations even hints at deception or misrepresentation. As held in *Freeman*, plaintiff asserts "a straightforward contract claim" that "does not rest on misrepresentation or fraudulent omission." *See* 704 F.3d at 1118. In fact, as a matter of California law, neither deception nor misrepresentation is an element of a breach-of-contract claim. *See First Commercial Mortg. Co. v. Reece*, 89 Cal. App. 4th 731, 744 (2001) ("the elements of the cause of action are the existence of the contract, performance by the plaintiff or excuse for nonperformance, breach by the defendant and damages").

Likewise, plaintiff's claims for negligence (Count II), breach of fiduciary duty (Count III), unjust enrichment (Count VI), and declaratory relief (Count I) are not predicated upon deception or misrepresentation. *See* ¶¶ 40–56, 66–70. Indeed, plaintiff makes no allegations of deception or misrepresentation in those counts. *See id.* Nor is

8

1    plaintiff required to establish deception or misrepresentation to prevail on those counts.

2    *See Toland v. Sunland Hous. Grp., Inc.*, 18 Cal. 4th 253, 267 (1998) ("A cause of action

3    for 'negligence' [requires] ... : (1) a duty, or obligation, recognized by law; (2) a breach of

4    the duty; (3) legal cause; and (4) actual loss or damage."); *Stanley v. Richmond*, 35 Cal.

5    App. 4th 1070, 1086 (1995) ("The elements of a cause of action for breach of fiduciary

6    duty are: (1) existence of a fiduciary duty; (2) breach of the fiduciary duty; and (3) damage

7    proximately caused by the breach."); *Lectrodryer v. Seoulbank*, 77 Cal. App. 4th 723, 726

8    (2000) ("the elements for a claim of unjust enrichment: receipt of a benefit and unjust

9    retention of the benefit at the expense of another"); *Brownfield v. Daniel Freeman*

10   *Marina Hosp.*, 208 Cal. App. 3d 405, 410 (1989) ("A complaint for declaratory relief must

11   demonstrate: (1) a proper subject of declaratory relief, and (2) an actual controversy

12   involving justiciable questions relating to the rights or obligations of a party.").

13          As for the two remaining counts under California's consumer-protection statutes

14   — the CLRA and the UCL — plaintiff does allege misrepresentations made by Robinhood

15   regarding the quality of its online platform and the risks of its outages. *See* ¶¶ 73, 79, 82.

16   For three reasons, however, these scant allegations do not alter "the gravamen or essence

17   of" plaintiff's nonfraud-based claims or transform them into fraud-based claims subject

18   to the SLUSA bar. *See Freeman*, 704 F.3d at 1116.

19          First, plaintiff's CLRA and UCL claims do not sound in fraud because, as the Ninth

20   Circuit noted in *Vess v. Ciba-Geigy Corp. USA*, "[f]raud is not an essential element of a

21   claim under these statutes." 317 F.3d 1097, 1103 (9th Cir. 2003). This is especially so with

22   regard to the UCL claim. Written in the disjunctive — "unlawful, unfair *or* fraudulent,"

23   Section 17200 of the California Business and Professions Code prohibits not only

24   "fraudulent" business practices, but also "unlawful" *or* "unfair" business practices. *See*

25   CAL. BUS. & PROF. CODE § 17200 (emphasis added); *see also Berryman v. Merit Prop.*

26   *Mgmt., Inc.*, 152 Cal. App. 4th 1544, 1554 (2007). Here, plaintiff expressly invokes the

27

28

**9**

1    "unfair" and "unlawful" prongs of the UCL. *See* ¶¶ 78, 82–83. As such, plaintiff's claims

2    fall outside the SLUSA bar.

3            Second, it is well settled that a party may plead alternative theories of liability, even

4    if those theories are inconsistent or independently sufficient. *Cleveland v. Policy Mgmt.*

5    *Sys. Corp.*, 526 U.S. 795, 805 (1999); *PAE Gov't Servs., Inc. v. MPRI, Inc.*, 514 F.3d 856,

6    859 (9th Cir. 2007). As held in *Vess*, "plaintiff may choose not to allege a unified course

7    of fraudulent conduct in support of a claim, but rather to allege some fraudulent and some

8    non-fraudulent conduct." *See* 317 F.3d at 1104. Here, in addition to alleging

9    misrepresentation on the part of Robinhood, plaintiff also asserts claims that are free of

10   any allegations of misrepresentation (*e.g.*, negligence (Count II) and breach of contract

11   (Count IV)). Misrepresentation or deceptive conduct does not form the gravamen of these

12   non-fraud claims. *See Freeman*, 704 F.3d at 1116; *see also LaSala v. Bordier et Cie*, 519

13   F.3d 121, 141 (3d Cir. 2008) (holding that SLUSA preemption cannot be based on

14   extraneous allegations and would not apply to breach-of-fiduciary-duty claims unless an

15   allegation of misrepresentation operates as a "factual predicate").

16           Third, even if a complaint contains claims that are subject to the SLUSA bar, it does

17   not necessarily follow that the remaining claims are also precluded. "SLUSA does not

18   require the dismissal of non-precluded claims along with precluded claims." *Proctor v.*

19   *Vishay Intertechnology Inc.*, 584 F.3d 1208, 1227 (9th Cir. 2009). Because

20   misrepresentation is not the gravamen of plaintiff's nonfraud claims, at a minimum, those

21   claims fall outside of the SLUSA bar's purview. *See Freeman*, 704 F.3d at 1116–18

22   (holding that SLUSA precludes some, but not all, of plaintiffs' claims).

23                              *        *        *

24           This action arises from Robinhood's two-day-long system crashes — not "any

25   manipulative or deceptive device" that is "designed to affect the price of a security

26   artificially." *See Desai v. Deutsche Bank Sec. Ltd.*, 573 F.3d 931, 940–41 (9th Cir. 2009).

27   As held in *Fleming*, "trading system crash[es]" do not "involve manipulative conduct" and

28   are thus out of SLUSA's reach. *See* 878 F.3d at 1154. Thus, this Court should remand.

### B. The SLUSA Bar Is Inapplicable Because Plaintiff's Claims Do Not Arise "in Connection with" the Purchase or Sale of a Covered Security

Even if a misrepresentation or omission is found to be a factual predicate of any claim, the SLUSA bar is applicable only if such misrepresentation or omission involves "a material fact in connection with the purchase or sale of a covered security." *See* 15 U.S.C. §§ 77p(b), 78bb(f)(1)–(2); *see also Madden*, 576 F.3d at 964. As the Ninth Circuit has repeatedly recognized, although the "in-connection-with" requirement "must be read broadly," it may not be interpreted "so broadly that the connection between a defendant's conduct and the covered security becomes immaterial." *Banks v. N. Trust Corp.*, 929 F.3d 1046, 1054 (9th Cir. 2019). Even before the Supreme Court put finer demarcation on the reach of the "in-connection-with" requirement in *Troice*, the Ninth Circuit has held that, to satisfy the requirement, there must be "more than some tangential relation" between the defendant's fraud and the "securities transaction":

> While this ["in connection with"] language is capacious, *it doesn't reach all transactions in which securities play a role, however incidental.* ... The fraud in question must relate to the nature of the securities, the risks associated with their purchase or sale, or some other factor with similar connection to the securities themselves. While *the fraud in question* need not relate to the investment value of the securities themselves, it *must have more than some tangential relation to the securities transaction.*

*Freeman*, 704 F.3d at 1116 (internal citations and quotation marks omitted; emphases added); *accord Spielman*, 332 F.3d at 123 (the "SLUSA bar" has a "broad, *but not unlimited*, scope").

In its latest decision reading SLUSA's scope, the Supreme Court fine-tuned the "in-connection-with" requirement in *Troice*. There, the Supreme Court refused to apply the SLUSA bar to the victims of Allen Stanford's multibillion-dollar Ponzi scheme. *Troice*, 571 U.S. at 384–85. The victims alleged that they were induced by Stanford's fraud to purchase "*uncovered* securities" that "defendants falsely told the victims ... were backed by *covered* securities." *Id.* at 381 (emphases in original). In finding SLUSA inapplicable, the Supreme Court limited the scope of the "in-connection-with" requirement such that it "does not extend further" than "misrepresentations that are material to the purchase or

Plaintiff's Motion to Remand Action                                    Case No. 3:20-cv-3550-JD

sale of a covered security." *Id.* at 387. In other words, a misrepresentation is not "'in connection with' such a 'purchase or sale of a covered security' unless it is material to a decision by one or more individuals (other than the fraudster) to buy or to sell a 'covered security.'" *Id.* This "suggests a connection that matters" — that "the misrepresentation [must] make[] a significant difference to someone's decision to purchase or to sell a covered security." *Id.*

*Troice*'s interpretation of the "in-connection-with" requirement compels a finding that any misrepresentations or omissions on the part of Robinhood fall outside SLUSA's reach. Plaintiff and the other class members are investors who had decided to purchase or sell securities before they signed up to use Robinhood's services. *See* ¶¶ 16, 24–36. To the extent that Robinhood's business practices amount to fraud, they were "material" or "ma[de] a significant difference to" plaintiff's and other class members' decisions to use Robinson's services. *See* ¶ 81. But they were *not* "material" to plaintiff's and other class members' decisions to purchase or sell any "covered securit[ies]."

The lack of connection between Robinhood and any purchases or sales of securities is borne out by the Customer Agreement between Robinhood and plaintiff and other class members.[3] *See* Chang Decl., Ex. A. In the Customer Agreement, Robinhood expressly disclaims any involvement or liability in a customer's decision to invest in any security:

**5**.   **Customer Representations and Responsibilities**.

**A.**   **Self-directed Account**.

I understand that My Account is self-directed, and so that I am solely responsible for any and all orders placed in My Account and that all orders entered by Me or on My behalf are unsolicited and based on My own investment decisions .... Accordingly, I agree that *neither Robinhood nor any of its employees*, *agents*, *principals*, *or representatives*:

---

[3] The Customer Agreement is expressly referred to in the complaint (*see* ¶ 58) and is thus "[incorporated by reference] as part of the complaint." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). The relevant excerpts of the Robinhood Financial LLC & Robinhood Securities, LLC Customer Agreement (Revised April 28, 2020) are attached as Exhibit A (*available at* https://cdn.robinhood.com/assets/robinhood/legal/Customer %20Agreement.pdf (last visited June 26, 2020)) to the Declaration of Albert Y. Chang ("Chang Decl.").

1. *provide investment advice* in connection with this Account;

2. *recommend any security, transaction or order*;

3. *solicit orders*;

4. *act as a market maker in any security*;

5. *make discretionary trades*; and

6. *produce or provide first-party research providing a specific investment strateg[y] such as buy, sell or hold recommendations*, first-party ratings and/or price targets. ...

Chang Decl., Ex. A at 5 (emphases added).

All told, any misrepresentations or omissions on the part of Robinson do not relate to the nature of the securities, the risks associated with their purchase or sale, or some other factor with similar connection to the securities themselves." *See Falkowski*, 309 F.3d at 1130–31. Plaintiff and other class members' *use of Robinson's online services* is the only connection between its "fraud" and any security transactions. Under *Troice* and Circuit precedent, such "connection" is too tangential to satisfy the "in-connection-with" requirement. *See Troice*, 571 U.S. at 387.

In sum, plaintiff's state-law claims are not the result of artful pleading of securities-fraud claims. They are far from garden-variety claims under Section 10(b) of the Exchange Act, which are typically brought against publicly-traded corporations alleging fraudulent inflation of stock price — by using a "manipulative or deceptive device" "in connection with the purchase or sale of [the corporation's] security." *See* 15 U.S.C. § 78j(b). Rather, this case involves a class of California-based customers of Robinhood — a brokerage firm — and their online trading accounts with Robinhood. Plaintiff does not allege that Robinhood induced him and other class members to purchase or sell a particular security — or any security at all. Nor does plaintiff allege that Robinhood made any statements regarding the price of any security. Rather, plaintiff claims that:

- Robinhood was negligent in failing to maintain its online trading system (*see* ¶¶ 46–52);

- Robinhood breached its Customer Agreements, as well as other duties, by causing massive system-wide outages for two days in March 2020 and by failing to properly disclose the risks of outages (*see* ¶¶ 54–65); and

- Robinhood violated the CLRA and UCL by engaging in unfair and unlawful business practices, such as touting itself "as a high-tech company with '[e]xceptionally engineered systems'" and promising customers "trad[ing] 'in [r]eal [t]ime'" but failing to live up to those promises (*see* ¶¶ 25, 72–84).

To the extent that any misrepresentations or omissions form the basis of plaintiff's claims, they concern Robinhood and do not concern any "purchase or sale of [any] covered security." *See* 15 U.S.C. § 77p(b)(1). No stock price inflation resulted from any alleged misrepresentations or omissions.

These facts set plaintiff's case apart from the cases in which the Supreme Court found the SLUSA bar to be applicable. Every one of those cases involved "victims who took, who tried to take, who divested themselves of, who tried to divest themselves of, or who maintained *an ownership interest* in [a covered security]." *See Troice*, 571 U.S. at 388 (emphasis in original). In every one of those cases, the misconduct pertained to the purchase or sale or holding of particular securities — "'purchases' or 'sales' induced by fraud." *Id.* For example, in *Dabit*, the victims were holders of particular covered securities that the defendants' fraud caused to become overvalued. *See* 547 U.S. at 71. In *SEC v. Zandford*, defendants sold customer's securities and used proceeds from the sale of those particular securities for his own benefit. *See* 535 U.S. 813, 822 (2002). In *The Wharf (Holdings) Ltd. v. United International Holdings, Inc.*, the victims purchased an oral option to buy a company's stock that the company intended not to honor. *See* 532 U.S. 588, 589 (2001). In *United States v. O'Hagan*, the defendant used confidential information to gain an advantageous market position in purchasing a company's stock. *See* 521 U.S. 642, 646 (1997). And, in *Superintendent of Insurance of New York v. Bankers Life & Casualty Co.*, a company that authorized the sale of its treasury bonds was

**14**

1   "duped" into believing that the company would receive the proceeds of the sale. *See* 404

2   U.S. 6, 9–10 (1971).

3       As the Supreme Court noted, "[e]very one of these cases … concerned a false

4   statement (or the like) that was 'material' to another individual's decision" to purchase or

5   sell a security. *Troice*, 571 U.S. at 393. In contrast, any misrepresentations or omissions

6   alleged in this case — Robinhood's false advertising of its online trading platform — did

7   not "make[] a significant difference" and, in fact, any "difference to [plaintiff's] decision

8   to purchase or to sell a covered security." *Id.* at 387–88. This is so because Robinhood's

9   false advertising induced only plaintiff and other class members to *use its online

10  platform*. *See* ¶ 81 (alleging that had plaintiff and the class members known the truth of

11  the risks of system outages, they "would not have registered for or used Robinhood's

12  services"). Robinhood did not — and plaintiff does not allege that Robinhood did — induce

13  anyone to purchase or sell any security. *See id.* In fact, it is undisputed that plaintiff and

14  other class members can trade financial instruments, such as cryptocurrency (¶ 3), that

15  are not "covered securit[ies]." So, it cannot be said that any alleged misrepresentations or

16  omissions here are made "in connection with the purchase or sale of a covered security."

17  *See* 15 U.S.C. § 77p(b)(1).

18      To hold otherwise would conflict with the limit imposed by *Troice* on the scope of

19  the "in-connection-with" requirement. Such an impermissible expansion of SLUSA's

20  reach would not only deviate from SLUSA's purpose of curbing securities-fraud class

21  actions disguised in state-law claims, but would also "interfere with state efforts to

22  provide remedies for victims of ordinary state-law frauds." *Troice*, 571 U.S. at 391. It

23  would also violate the "'strong presumption'" against removal. *See Gaus*, 980 F.2d at 566.

24  No law — and Robinhood has cited none — allows this Court to apply the SLUSA bar to

25  this case. The Court therefore must remand.

26  ///

27  ///

28

## VI.    CONCLUSION

For the reasons set forth above, the Court should grant plaintiff's motion and remand this action to the Superior Court of the State of California, County of San Mateo.

Dated:  June 26, 2020

Respectfully submitted,

BOTTINI & BOTTINI, INC.
Francis A. Bottini, Jr. (SBN 175783)
Albert Y. Chang (SBN 296065)
Yury A. Kolesnikov (SBN 271173)

s/ Francis A. Bottini, Jr.
Francis A. Bottini, Jr.

7817 Ivanhoe Avenue, Suite 102
La Jolla, California 92037
Telephone:  (858) 914-2001
Facsimile:    (858) 914-2002
fbottini@bottinilaw.com
achang@bottinilaw.com
ykolesnikov@bottinilaw.com

*Attorneys for Plaintiff Stanley Withouski*

16